IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES WILLIAM REED, III,            *
Aka DWIGHT BYRD,
         Plaintiff,

                                            *

      v.                                    CIVIL ACTION NO. CCB-08-3334

                                            *

TIMOTHY BURDOCK  et al.,
         Defendants.         *
                                  ******

**MEMORANDUM**

On December 10, 2008, *pro se* plaintiff Charles William Reed, III, aka Dwight Byrd, an inmate currently incarcerated in Huntsville, Texas, filed a civil rights complaint pursuant to 42 U.S.C. §1983 seeking money damages and alleging that he was denied adequate medical care while incarcerated in Maryland.  Pending before the court is defendants' dispositive motion (*see* Paper No. 12), which shall be treated as a motion for summary judgment.[1]  No hearing is needed to resolve the pending dispositive motion.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons that follow the motion SHALL BE GRANTED.

**BACKGROUND**

By way of unverified complaint, plaintiff states that on June 5, 2008, he was returned to the Maryland Division of Corrections from a Texas prison.  He states that while in Texas he suffered a broken and dislocated finger.  Upon returning to Maryland he advised medical employees that he had sutures and a pin in his hand.  Plaintiff states that he filed several requests for medical attention which were not acknowledged.  He claims that he then removed the sutures himself.  Plaintiff states

---

[1] Plaintiff has responded to defendants' dispositive motion.  (Paper No. 21.)  In reviewing the papers before the court, the facts, as well as the inferences to be drawn there from, must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

that in August, 2008, x-rays revealed that the pin remained in his hand.  He now has limited movement and little feeling in his hand.  Plaintiff states he was scheduled to see an orthopedist and undergo physical therapy, but neither service was provided. (Paper No. 1.)

According to the verified record, plaintiff has a history of a fracture to his left fifth finger. He underwent surgery to repair the fracture on January 15, 2008, in Texas and received physical therapy for the injury at that time.  On June 5, 2008, plaintiff was transferred from Texas to the North Branch Correctional Institution in Cumberland, Maryland.  From June 8, 2008 to June 22, 2008, plaintiff submitted three sick call slips[2] complaining of stiffness and numbness in his left fifth finger.  He also complained that the outside of his left hand was numb and requested physical therapy. (Paper No. 12 Ex. A.)

Plaintiff was evaluated by Nurse Practitioner Anna Hammond on June 26, 2008.  Hammond noted plaintiff's left fifth finger was stiff and he was not able to bend it.  She requested a physical therapy evaluation to increase flexibility and range of motion.  *Id*.  Plaintiff was scheduled for a physical therapy evaluation on July 1, 2008, but was not able to be seen due to his security status.[3] *Id*.  Dr. Ottey avers that due to the length of time that had passed since plaintiff's surgery he would likely have received no benefit from physical therapy.  *Id*.

Plaintiff filed two sick call slips on July 20, 2008, complaining that he could not bend his left fifth finger and had little feeling on the left side of his hand.  He requested physical therapy and an orthopedic consult.  On July 27, 2008, plaintiff was evaluated by Dr. Ottey who noted that plaintiff had severely limited range of motion on the last two digits of his left hand.  Dr. Ottey ordered an x-ray of plaintiff's hand.  *Id*.

---

[2] Plaintiff indicates that he filed at least five sick call slips during his period of time. (Paper No. 21.)

[3] The court is aware from numerous other filings by plaintiff that he has been placed on staff alert repeatedly and has a poor adjustment history.  *See generally, Reed v. Warden*, CCB-08-2368 (D. Md. 2008); *Reed v. Warden*, CCB-08-2184 (D. Md. 2008); and *Reed v. Dotson*, CCB-05-1216 (D. Md. 2005).

On August 15, 2008, plaintiff's hand was x-rayed, revealing two pins at the base of plaintiff's fifth finger and possible arthritis of the fifth finger metacarpophalangeal joint. No identifiable problems were observed as to plaintiff's fourth finger. Dr. Ottey avers that the pins do not need to be removed. *Id.* Dr. Ottey further avers that due to plaintiff's security status, lack of complaints after August, 2008, and length of time since the injury, physical therapy was not pursued. *Id.*

## STANDARD OF REVIEW

A motion for summary judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses

3

from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## ANALYSIS

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (stating that there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison

officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844)).  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (noting that a court's focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Plaintiff has failed to demonstrate that defendants were deliberately indifferent to his medical needs.  Plaintiff's injury was six months old at the time he was returned to Maryland.  After submitting sick call slips he was seen and evaluated by medical staff who directed he be scheduled for a physical therapy consult.  Correctional staff informed medical staff that due to plaintiff's "staff alert" status he would not be brought to the medical department for the physical therapy evaluation. (Paper No. 12 Ex. A.)  Defendants were not responsible for plaintiff's inability to be evaluated for physical therapy.  Plaintiff states that defendants have provided no "proof" that he was on staff alert or a behavioral problem.  (Paper No. 21.)  Whether plaintiff was in fact on staff alert and a behavioral problem at the time is immaterial, as medical employees were entitled to rely on the representations of correctional staff regarding their inability to bring plaintiff to medical for the physical therapy evaluation.  The truth regarding plaintiff's status is immaterial as medical employees had no ability to command plaintiff's presence in the medical unit.  Despite the inability to obtain a physical therapy consult, plaintiff was later evaluated by the physician and x-rays were taken of his hand.  It was determined by the physician that the pins did not need to be removed and

that it was unlikely plaintiff would benefit from physical therapy.  (Paper No. 12 Ex. A.)   After

August, 2008, plaintiff filed no additional sick call slips regarding his hand.  *Id.*  Plaintiff was

paroled to a Texas detainer on May 6, 2009.  (Paper No. 17.)

In light of the foregoing, the court finds that plaintiff simply disagrees with the medical

judgment of his health care providers.  Such disagreement with a course of treatment does not

provide the framework for a federal civil rights complaint but rather, at most, states a claim of

negligence. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).  The court simply cannot find from

the uncontroverted medical records before it that the medical care received by plaintiff was so

egregious as to constitute an Eighth Amendment violation.

## **CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment shall be granted. A

separate order follows.


September 30, 2009                                          /s/
Date                                                       Catherine C. Blake
                                                           United States District Judge